Andrew S. Weller, Respondent, *v.* Joseph H. Tuthill, Appellant.

A company had been organized, composed of individuals owning oil lands, under the name of the E. P. Co., and all of its stock subscribed for. It was the intention to have it incorporated on the basis of the property so held, but before this was done defendant, who was a subscriber to the stock, agreed with plaintiff that if the latter would pay to the treasurer $500 he would see that plaintiff had a half share of the stock. Plaintiff paid the money, which was credited to defendant. A corporation was subsequently duly incorporated identical as to shareholders and property, but named the R. F. P. Co. No stock was transferred to plaintiff and no demand therefor was made by him. The R. F. P. Co. becoming embarrassed its property was, by direction of the directors, sold at auction and bid in by H. for the benefit of the stockholders. Defendant paid his proportion of the sum bid. In an action to recover the $500, *held*, that, to put defendant in default, a demand by plaintiff of the stock was requisite, or proof given that it was out of defendant's power to transfer it; that defendant's contract would have been performed by a transfer of stock in the corporation succeeding to the property of the E. P. Co.; and that a transfer by defendant to plaintiff of an interest in the property held by H. in trust, equal to the interest defendant contracted to convey, would have satisfied any equitable claim of plaintiff and have been a legal performance of the contract.

(Argued May 26, 1876; decided June 6, 1876.)

Appeal from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought to recover the sum of $500 alleged

to have been paid by plaintiff, for the use and benefit of defendant, at his request.

The referee found, in substance, that, prior to the 3d day of March, 1865, a number of persons at the village of Ellenville and that vicinity, owning oil lands, associated themselves together, calling themselves, or their association, the Ellenville Petroleum Company. The association was not organized as a corporation; but they provided for a capital stock, divided it into shares of $1,000 each, and subscribed the amount of the capital stock. They had officers known as president, secretary and treasurer, and kept books and accounts of their transactions. Defendant was the president.

The defendant was the holder of nine and one-half shares of the so-called original stock of the said company. Upon plaintiff's complaining to defendant that he had not been permitted to take an interest in the company, defendant told him that there was a half share which he (defendant) could control. and if plaintiff would send to him, or to the treasurer, his check for $500, he would see that plaintiff had a half share of the stock. Plaintiff accordingly, on March 3, 1865, sent his check to the treasurer for that amount, which was credited to defendant and applied toward payment for his stock. Afterwards all the shares of the original stock were doubled, thus giving the defendant nineteen shares.

That, on or about the 17th day of June, 1865, a corporation was duly organized under the laws of the State of Pennsylvania, and became a corporation by and under the name of The Ross Farm Petroleum Company. The defendant had nineteen shares of stock, of $1,000 each, in the last above named company or corporation, being for the same stock held by him in the Ellenville Petroleum Company, and each of the subscribers or shareholders in the so-called Ellenville Petroleum Company, took the same number of shares of stock in the Ross Farm Petroleum Company. Both companies, so far as related to its shareholders and property, were identical. That, on the 10th of September, 1866, the Ross Farm Petroleum Company passed a resolution that its property be

sold at auction, and the company be dissolved. The property was, on the same day, sold at auction to Jacob Hermance, for $4,500. Hermance sent a notice to the stockholders that he bought for their benefit, and held the property, in trust, for all who would pay their proportion of the bid. Defendant paid his proportion for the stock so held by him. That no interest or share, in either of the companies, was ever transferred to plaintiff or tendered to him, nor has he ever demanded the same. As conclusion of law, the referee found that plaintiff was entitled to recover the same. Further facts appear in the opinion.

*A. Schoonmaker, Jr.*, for the appellant. Plaintiff was an equitable stockholder in the company. (*Thorpe* v. *Woodhull*, 1 Sand. Ch., 411; *Spear* v. *Crawford*, 14 Wend., 20; *B. and N. Y. C. R. R. Co.* v. *Dudley*, 14 N. Y., 347; *Burr* v. *Wilcox*, 22 id., 551; *Stover* v. *Flack*, 30 id., 64; *Chester Glass Co.* v. *Dewey*, 16 Mass., 95; *Ag. Bk.* v. *Burr*, 24 Me., 256; *Harlem Canal Co.* v. *Seixas*, 2 Hall, 504.) He was entitled to a certificate of his stock, and which, if refused, he could sue the company for, and recover the highest market price of the stock at any time after the refusal. (*Com. Bk. of Buffalo* v. *Kortright*, 22 Wend., 348.) There was no cause of action against the defendant upon the facts proven. (*Osby* v. *Conant*, 5 Lans., 310; *Patrick* v. *Metcalf*, 37 N. Y., 332; *Butterworth* v. *Gould*, 41 id., 450; *Henry* v. *Wilkes*, 37 id., 562; *Colvin* v. *Holbrook*, 2 id., 126; *Hall* v. *Landesdale*, 46 id., 70; *Denny* v. *Man. Co.*, 2 Den., 115; 5 id., 639.) Plaintiff could only recover the market value of a-half share of the stock. (*Wheeler* v. *Allen*, 40 Barb., 460.)

*Charles A. Fowler* for the respondent. No demand for the stock was necessary. (*Dumonds* v. *Carpenter*, 3 J. R., 183; *McNielly* v. *Richardson*, 4 Cow., 607; *H. and N. H. R. R. Co.* v. *Croswell*, 5 Hill, 383, 386; *Blatchford* v. *Ross*, 37 How. Pr., 110; *Frothingham* v. *Barney*, 6 Hun, 366, 372.) Plaintiff may recover back the money paid by him to defendant. (*Churchill* v. *Stone*, 58 Barb., 233.)

*Per Curiam.* The Ellenville Petroleum Company was organized, and the stock fully subscribed for, before the plaintiff paid to the treasurer the money which he seeks to recover in this action.

The referee finds that the plaintiff complained to the defendant that he had not been permitted to take a share or interest in the company, and the defendant then said to him, that there was a half share he could control, and if the plaintiff would send to him or the treasurer $500, the nominal value of the half share, he would see that the plaintiff had a half share of the stock. The plaintiff on the 3d day of March, 1865, paid the sum mentioned to the treasurer, who credited it to the defendant. It was understood between the parties that the stock which the plaintiff was to have was part of that alloted to the defendant.

The Ellenville company was composed of individuals who owned oil lands in Pennsylvania. The company was not incorporated. The capital stock was fixed at a certain sum, and was divided into shares of $1,000 each, of which the defendant was entitled to nine and a half shares. It was however the intention of the association to organize as a corporation, and this intention existed before the contract was made between the plaintiff and defendant. This is apparent from the proceedings of the company as shown by the minutes or record of the meetings of the associates. The corporation was formed under the Pennsylvania statute, in June, 1865. The stockholders in the original association were the stockholders in the corporation, and the property held by the associates was transferred to the corporation. The referee finds that both companies, so far as related to its shareholders and property, were identical. The name of the corporation was The Ross Farm Petroleum Company, and this and the corporate character of the new company, constituted the only distinction between the two. The plaintiff, in order to recover back the money paid on the contract to purchase the stock, must establish that there was a breach by the defendant of his contract to transfer it. The law, on this being shown,

would raise an implied promise on his part to restore the consideration. But mere proof that the stock had not been transferred to the plaintiff is not sufficient to establish a breach.

To put the defendant in default, a demand of the stock by the plaintiff was necessary, or proof given that the defendant had put it out of his power to transfer it. It is conceded that no demand was made, but it is claimed that the transfer of the property of the associates to the corporation made it impossible for the defendant to perform his contract to give the plaintiff the interest which he contracted for, viz., an interest in the stock of the Ellenville Petroleum Company, and that this made a demand unnecessary. But we are of opinion that under the circumstances proved, the defendant's contract would have been performed by a transfer of stock in the corporation which succeeded to the property of the Ellenville company. The plaintiff is chargeable with knowledge that the purpose of the association was to organize a corporation on the basis of the property held by them, and that company was to be merged in the proposed corporation. His subsequent conduct shows that he understood that his interest under the contract was subject to this change. After the sale of the corporate property to Hermance, in 1866, he stated to him that he thought he had some stock and that he had a right to come in and have the benefit of the right of redemption from the sale, and was informed that his name did not appear as stockholder. Then for the first time he seems to have conceived the idea that he could hold the defendant liable for the money paid. The defendant paid the sum necessary to retain his interest in the property sold, and a transfer to the plaintiff by the defendant of an interest in the property held by Hermance in trust for the stockholders, equal to the interest which the defendant contracted to convey to him, would have satisfied any equitable claim of the plaintiff and have been a legal performance of the defendant's contract. There is no equity in favor of the plaintiff's claim. For all that appears defendant has been ready and willing to perform his contract. The plaintiff took the risks of the

adventure, and the loss should be borne by him and not by the defendant. The defendant was not guilty of any fraud, and managed the interest of the plaintiff as he did his own, under an implied authority to do so.

The judgment should be reversed and a new trial granted. All concur, except FOLGER and ANDREWS, JJ., not voting. Judgment reversed.